UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Diego Luzuriaga,<br><br>Plaintiff,<br><br>v.<br><br>Townsquare Media, Inc. d/b/a New Jersey 101.5,<br><br>Defendant. | Case No:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Diego Luzuriaga ("Plaintiff"), by and through his undersigned counsel, for his Complaint against defendant Townsquare Media, Inc. d/b/a New Jersey 101.5 ("Defendant") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.

2. Plaintiff is a professional photographer and videographer based in the New York metropolitan area who documents breaking news events as they unfold. This action concerns two of his videos: footage of multiple Hackensack police vehicles set on fire, and footage of the police response to a fatal stabbing outside a TGI Fridays in Linden, New Jersey (together, the "Videos").

3. Within days of each Video's first publication, Defendant copied a still frame from the Video, stored it on its own server, and displayed it as the featured image of an article on its website, nj1015.com, about the very event the Video depicts. Defendant never sought or obtained a license from Plaintiff.

## PARTIES

4. Plaintiff Diego Luzuriaga is an individual who resides in Kings County, New York.

5. Upon information and belief, defendant Townsquare Media, Inc. is a Delaware corporation with a principal place of business at 4 Manhattanville Road, Suite 107, Purchase, in Westchester County, New York, and does business as New Jersey 101.5.

SLG SANDERS LAW GROUP

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Business

9. Plaintiff is a visual storyteller, photographer, and videographer based in the New York metropolitan area. He has developed a body of work focused on capturing newsworthy events, local happenings, and real-world moments through photography and video.

10. A graduate of the Los Angeles Film School, Plaintiff combines technical training with a documentary-style approach that emphasizes authenticity, timing, and visual impact, and he documents events as they unfold to create compelling visual records of contemporary life.

11. Breaking news footage of this kind requires Plaintiff to respond to unfolding events at all hours, often overnight and on short notice, and to work at active emergency scenes. It cannot be recreated after the fact; its value lies in its having been captured at the moment the event occurred, and that value is greatest in the period immediately following the event.

12. As a professional creator, Plaintiff invests substantial time, skill, and resources in producing original photographic and audiovisual works, which are distributed through digital and online media platforms. He relies on the licensing and authorized use of his content and maintains valuable rights in the images and footage he creates. The unauthorized reproduction, display, distribution, or commercial exploitation of his copyrighted works diminishes the value of those rights and interferes with the market for his creative content.

### B. Plaintiff's Copyright Ownership

13. On the night of August 30, 2025, multiple marked police vehicles were set on fire in a municipal parking lot in Hackensack, New Jersey. Plaintiff recorded footage of the scene.

14. On August 31, 2025, Plaintiff first published the video titled "8.31.2025_Multiple Police Cars Set on Fire" ("Video #1"). A copy of a still image from Video #1 is attached hereto as

SLG SANDERS · LAW GROUP ·

part of Exhibit 1.

15. Video #1 was first published on YouTube with a description that identified Plaintiff as its author ("Video by Diego Luzuriaga") and stated that the content "is available for license" and that "[p]ublication of this content without authorization shall be deemed a violation of the Copyright Act."

16. On September 10, 2025, Video #1 was registered by the United States Copyright Office (the "USCO") under Registration No. PA 2-561-097, within three months of its first publication.

17. On the night of November 9, 2025, a man was fatally stabbed in the parking lot of a TGI Fridays restaurant on Route 1 in Linden, New Jersey. Plaintiff recorded footage of the police response at the scene.

18. On November 10, 2025, the video titled "11.10.2025_Fatal Stabbing at TGI Fridays" ("Video #2") was first published, with Plaintiff's authorization, on abc7ny.com, the website of New York television station WABC-TV. A copy of a still image from Video #2 is attached hereto as part of Exhibit 1.

19. On November 26, 2025, Video #2 was registered by the USCO under Registration No. PA 2-570-481, within three months of its first publication.

20. Plaintiff is the author and sole owner of the copyright in each of the Videos.

21. In creating the Videos, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens, and camera equipment used to capture the Videos and made each and every artistic determination necessary for the creation of the works.

22. The Videos are original, creative works in which Plaintiff owns protectable copyright interests.

23. Plaintiff created the Videos with the intention of them being used commercially and for the purpose of display and/or public distribution, including through licensing to media organizations.

**<u>C. Defendant's Infringing Activity</u>**

24. Defendant is a media company that owns and operates local radio stations throughout the United States, together with a website for each station that publishes news, traffic, weather, entertainment, and other content.

25. Defendant is a publicly traded company (NYSE: TSQ) that describes itself as "a

community-focused digital and broadcast media and digital marketing solutions company." According to its most recent annual report on Form 10-K, as of March 9, 2026, Defendant owned and operated 340 radio stations in 74 local markets, together with a portfolio of more than 400 local news and entertainment websites and mobile apps.

26. Defendant's websites are central to how it makes money. Defendant generates revenue by selling advertising displayed to the audiences its websites attract, connecting local, regional, and national advertisers to consumers across its portfolio of websites and apps. According to its Form 10-K, Defendant's digital revenue was $236.0 million in 2025, comprising 55% of its total net revenue. Visual content such as photographs and video draws readers to Defendant's articles and, in turn, increases the advertising inventory Defendant can sell.

27. Defendant owns and operates the radio station New Jersey 101.5 and its website at nj1015.com (the "Website"), and is responsible for the Website's content.

28. The Website is a key component of Defendant's commercial enterprise. The Website is monetized in that it contains paid advertisements and solicits advertisers, promotes Defendant's mobile applications, newsletters, and contests, and drives listeners to Defendant's radio broadcasts, and, upon information and belief, Defendant profits from these activities.

29. On or about September 3, 2025, three days after Plaintiff first published Video #1, Defendant published an article on the Website titled "NJ Man, 78, Arrested After Police Cars Are Set on Fire in Hackensack," at https://nj1015.com/police-vehicles-fire-hackensack/ (the "Hackensack Article").

30. The featured image of the Hackensack Article is a composite image made from a still frame copied from Video #1, depicting a burned police vehicle, with a booking photograph of the accused superimposed on it ("Infringing Image #1"). Defendant copied and stored Infringing Image #1 on its own server, at https://townsquare.media/site/385/files/2025/09/attachment-nj-man-accused-of-torching-hackensack-police-cars-bergen-county-prosecutors-office-screenshot-eyewitness-news-new-york-via-youtube.jpg, and displayed it from that server on the Website.

31. Defendant did not credit Plaintiff as the author of Infringing Image #1, and instead credited it to "Bergen County Prosecutor's Office, Screenshot Eyewitness News New York via YouTube."

32. Upon information and belief, Defendant copied the frame from a broadcast or online video of WABC-TV ("Eyewitness News") that displayed Plaintiff's footage. Whatever

permission WABC-TV had to use Video #1, Plaintiff never granted WABC-TV any right to sublicense it, and WABC-TV did not and could not authorize Defendant to copy, store, or display it.

33. On or about November 10, 2025, the same day Plaintiff first published Video #2, Defendant published an article on the Website titled "Man Killed Outside Linden TGI Fridays," at https://nj1015.com/linden-tgi-fridays-stabbing/ (the "Linden Article," and together with the Hackensack Article, the "Articles").

34. The featured image of the Linden Article is a still frame copied from Video #2, depicting police vehicles outside the TGI Fridays restaurant at night ("Infringing Image #2," and together with Infringing Image #1, the "Infringing Images"). Defendant copied and stored Infringing Image #2 on its own server, at https://townsquare.media/site/385/files/2025/11/attachment-tgifriday-2.jpg, and displayed it from that server on the Website. Defendant did not credit Plaintiff as the author of Infringing Image #2.

35. Defendant did not display either of the Infringing Images by linking to or embedding any post (collectively, the "Infringements").

36. Defendant did not obtain the Infringing Images through any embedding feature of a social media or video-hosting platform. To the extent such platforms' terms of service permit third parties to display content at all, they permit display only through the platform's own embedded player, and do not authorize a third party to copy frames from a video, store them on its own server, and display them outside the platform. Plaintiff's license to WABC-TV to publish Video #2 likewise was non-exclusive and conferred no right to sublicense, and WABC-TV did not and could not authorize Defendant's use.

37. Each still frame is a copy of a protected portion of the respective Video. Defendant selected the frames it did because they captured the scenes the Articles reported on, and it used them for the same purpose for which Plaintiff created and licenses the Videos: to show its audience those events.

38. The Copyright Act expressly grants the owner of the copyright in an audiovisual work the exclusive right to display "the individual images" of that work publicly. 17 U.S.C. § 106(5).

39. Copies of screengrabs of the Articles, including archived captures from the time of publication, identifying the date of each Article and the specific URLs, are attached hereto as

SLG SANDERS · LAW GROUP ·

Exhibit 2.

40. The Infringements are copies of portions of the Videos that were copied and displayed by Defendant on the Website without license or permission, thereby infringing on Plaintiff's copyrights in and to the Videos.

41. Each of the Infringements includes a URL ("Uniform Resource Locator") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

42. Plaintiff did not discover the infringement of Video #1 earlier than September 3, 2025, or the infringement of Video #2 earlier than November 17, 2025.

43. On February 3, 2026, Plaintiff, through counsel, notified Defendant's counsel in writing of the Infringements, and did so again on March 5, 2026. At that time, both Infringing Images were still displayed on the Website.

44. Defendant did not promptly remove the Infringing Images after receiving that notice; Both Infringing Images remained displayed on the Website at least as of June 5, 2026, four months after the first notice, and Infringing Image #2 remained displayed at least as of June 29, 2026, nearly five months after it.

45. The Infringing Images have since been removed. Defendant also promoted each of the Articles on the Facebook page of New Jersey 101.5, in posts dated September 4, 2025 and November 11, 2025 that displayed Infringing Image #1 and Infringing Image #2, respectively, at https://www.facebook.com/nj1015/posts/pfbid02JdSSjchPwJ3YjqS86ErnBo37HwgiEmgauvBZC9EzKc7YNN3Q6D1zMzfF88wNy7mJl and https://www.facebook.com/nj1015/posts/pfbid0grfaDLF2mamEzLncmzES2XtiWbdpfCX7E7X7Xsr57QQKBfEQa8NG7xZYSqsHBFqwl.

46. To date, Defendant has not compensated Plaintiff for its use of the Videos.

47. Upon information and belief, Defendant is a sophisticated media company that owns or operates a large portfolio of radio stations, websites, and social media accounts, and has advanced operational expertise in an industry where copyright is prevalent.

48. Upon information and belief, Defendant's staff have significant experience in copyright matters due to the company's background as a large media company and are familiar with journalistic practices, including the need to ensure that images and videos used on

Defendant's websites have been properly licensed.

49. Defendant understands the value of copyright and the necessity of licensing. In its annual report, Defendant states that it "own[s] or ha[s] the rights to copyrights that protect the content of [its] products" and that it "pay[s] royalties to song composers and publishers through four performing rights organizations."

50. The Terms of Use governing Defendant's websites declare that "Townsquare owns and retains all proprietary rights in the Websites" and provide that visitors "may not copy, modify, publish, transmit, distribute, perform, display, or sell" that content. Defendant thus demands from others the very respect for copyright that it denied Plaintiff.

51. Defendant's unlicensed use of photographs and videos on its websites is not an isolated occurrence. Since 2016, Defendant has been named as a defendant in at least fifty-one copyright infringement actions in this District arising from its unlicensed use of photographs and videos on websites it owns and operates, including:

(a) *Sadowski v. Townsquare Media, Inc.*, No. 1:16-cv-06408 (S.D.N.Y. filed Aug. 11, 2016);

(b) *Tabak v. Townsquare Media, Inc.*, No. 1:16-cv-07800 (S.D.N.Y. filed Oct. 6, 2016);

(c) *Parisienne v. Townsquare Media, Inc.*, No. 1:17-cv-00500 (S.D.N.Y. filed Jan. 23, 2017);

(d) *Zlozower v. Townsquare Media, Inc.*, No. 1:17-cv-04161 (S.D.N.Y. filed June 3, 2017);

(e) *Sands v. Townsquare Media, Inc.*, No. 1:17-cv-07259 (S.D.N.Y. filed Sept. 24, 2017);

(f) *Mazza v. Townsquare Media, Inc.*, No. 1:18-cv-01992 (S.D.N.Y. filed Mar. 6, 2018);

(g) *Fowler v. Townsquare Media, Inc.*, No. 1:18-cv-03794 (S.D.N.Y. filed Apr. 29, 2018);

(h) *Zlozower v. Townsquare Media, Inc.*, No. 1:18-cv-06071 (S.D.N.Y. filed July 3, 2018);

(i) *Global Interactive Media, Inc. v. Townsquare Media, Inc.*, No. 1:18-cv-06880 (S.D.N.Y. filed July 31, 2018);

(j) *McGlynn v. Townsquare Media, Inc.*, No. 1:18-cv-08875 (S.D.N.Y. filed Sept. 27, 2018);

(k) *Vollweiler v. Townsquare Media, Inc.*, No. 1:18-cv-10274 (S.D.N.Y. filed Nov. 5, 2018);



SLG SANDERS · LAW GROUP ·

(l) *McDermott v. Townsquare Media, Inc.*, No. 1:18-cv-11452 (S.D.N.Y. filed Dec. 7, 2018);

(m) *Hermann v. Townsquare Media, Inc.*, No. 1:18-cv-12088 (S.D.N.Y. filed Dec. 20, 2018);

(n) *Hirsch v. Townsquare Media, Inc.*, No. 1:19-cv-01444 (S.D.N.Y. filed Feb. 14, 2019);

(o) *Chevrestt v. Townsquare Media, Inc.*, No. 1:19-cv-01993 (S.D.N.Y. filed Mar. 3, 2019);

(p) *Zlozower v. Townsquare Media, Inc.*, No. 1:19-cv-03395 (S.D.N.Y. filed Apr. 16, 2019);

(q) *Walsh v. Townsquare Media, Inc.*, No. 1:19-cv-04958 (S.D.N.Y. filed May 28, 2019);

(r) *Malluk v. Townsquare Media, Inc.*, No. 1:19-cv-06461 (S.D.N.Y. filed July 11, 2019);

(s) *Schiffman v. Townsquare Media, Inc.*, No. 1:19-cv-10467 (S.D.N.Y. filed Nov. 12, 2019);

(t) *Soler v. Townsquare Media, Inc.*, No. 1:20-cv-01119 (S.D.N.Y. filed Feb. 9, 2020);

(u) *Fedun v. Townsquare Media, Inc.*, No. 1:20-cv-02344 (S.D.N.Y. filed Mar. 17, 2020);

(v) *Shihab v. Townsquare Media, Inc.*, No. 7:21-cv-00148 (S.D.N.Y. filed Jan. 7, 2021);

(w) *Charming Beats LLC v. BuzzFeed, Inc.*, No. 1:22-cv-02202 (S.D.N.Y. filed Mar. 17, 2022) (naming Defendant as a co-defendant);

(x) *Estate of Modu v. Townsquare Media, Inc.*, No. 1:22-cv-05311 (S.D.N.Y. filed June 23, 2022);

(y) *Eclipse Sportswire v. Townsquare Media, Inc.*, No. 7:23-cv-06375 (S.D.N.Y. filed July 24, 2023);

(z) *Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:23-cv-09877 (S.D.N.Y. filed Nov. 8, 2023);

(aa) *Shook v. Townsquare Media, Inc.*, No. 1:24-cv-01764 (S.D.N.Y. filed Mar. 7, 2024);

(bb) *Borel v. Townsquare Media, Inc.*, No. 1:24-cv-02201 (S.D.N.Y. filed Mar. 24, 2024);

(cc) *Van Sise v. Townsquare Media, Inc.*, No. 7:24-cv-03836 (S.D.N.Y. filed May 17, 2024);

(dd) *Yang v. Townsquare Media, Inc.*, No. 1:24-cv-03841 (S.D.N.Y. filed May 17, 2024);

(ee) *Vila v. Townsquare Media, Inc.*, No. 7:24-cv-03845 (S.D.N.Y. filed May 17, 2024);

SLG SANDERS LAW GROUP

(ff) *Santiago v. Townsquare Media, Inc.*, No. 1:24-cv-03851 (S.D.N.Y. filed May 17, 2024);

(gg) *Neil Zlozower Photography Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03853 (S.D.N.Y. filed May 17, 2024);

(hh) *Stop Making Media, Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03855 (S.D.N.Y. filed May 17, 2024);

(ii) *Chosen Figure LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03873 (S.D.N.Y. filed May 20, 2024);

(jj) *Hames v. Townsquare Media, Inc.*, No. 1:24-cv-03875 (S.D.N.Y. filed May 20, 2024);

(kk) *Nick Kozak Photography LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03876 (S.D.N.Y. filed May 20, 2024);

(ll) *Ong v. Townsquare Media, Inc.*, No. 1:24-cv-03877 (S.D.N.Y. filed May 20, 2024);

(mm) *McDermott v. Townsquare Media, Inc.*, No. 1:24-cv-03883 (S.D.N.Y. filed May 20, 2024);

(nn) *Polaris Images Corp. v. Townsquare Media, Inc.*, No. 1:24-cv-04210 (S.D.N.Y. filed June 3, 2024);

(oo) *Richardson v. Townsquare Media, Inc.*, No. 1:24-cv-04217 (S.D.N.Y. filed June 3, 2024), *aff'd in part, vacated in part, and remanded*, 174 F.4th 299 (2d Cir. 2026);

(pp) *Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:24-cv-04222 (S.D.N.Y. filed June 3, 2024);

(qq) *Malluk v. Townsquare Media, Inc.*, No. 1:24-cv-04321 (S.D.N.Y. filed June 6, 2024);

(rr) *Fish v. Townsquare Media, Inc.*, No. 1:24-cv-05610 (S.D.N.Y. filed July 25, 2024);

(ss) *Michael Grecco Productions, Inc. v. Townsquare Media, Inc.*, No. 7:24-cv-07584 (S.D.N.Y. filed Oct. 7, 2024);

(tt) *Martinka v. Townsquare Media, Inc.*, No. 7:24-cv-07797 (S.D.N.Y. filed Oct. 15, 2024);

(uu) *Moses v. Townsquare Media, Inc.*, No. 7:24-cv-07798 (S.D.N.Y. filed Oct. 15, 2024);

(vv) *Global Weather Productions LLC v. Townsquare Media, Inc.*, No. 7:25-cv-06059 (S.D.N.Y. filed July 23, 2025);

(ww) *Andy Ryan Photographer, LLC v. Townsquare Media, Inc.*, No. 1:25-cv-06542 (S.D.N.Y. filed Aug. 8, 2025);

(xx) *August Image, LLC v. Townsquare Media, Inc.*, No. 7:25-cv-09341 (S.D.N.Y. filed Nov. 7, 2025); and

(yy) *Miller v. Townsquare Media, Inc.*, No. 1:26-cv-06038 (S.D.N.Y. filed July 16, 2026).

52. Each of those actions put Defendant on notice that copying photographs and videos found online for use on its websites without a license infringes the copyrights in those works. Defendant nonetheless copied the Videos after at least forty-nine of those actions had been filed against it, and then left the Infringing Images on the Website for months after Plaintiff's notice.

53. Upon information and belief, Defendant takes an active and pervasive role in the content posted on the Website, including, but not limited to, selecting, copying, editing, posting, and displaying images and videos, including still frames from Plaintiff's Videos.

54. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, since such a claim would amount to only willful blindness to the Infringements on the part of Defendant.

55. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws, or at a minimum in reckless disregard of Plaintiff's rights.

56. Despite the many actions identified above, upon information and belief, Defendant has not adopted any effective practice for determining whether it holds a license before publishing photographs and video footage that its staff find online, and instead continues to treat such content as free for the taking.

57. Upon information and belief, Defendant had complete control over and actively reviewed and monitored the content posted on the Website, and had the legal right and ability to control and limit the infringing activities on the Website.

58. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements, in that the Infringements increased traffic to the Website and, in turn, caused Defendant to realize an increase in its advertising revenues.

59. Defendant's use of the Videos harmed the actual market for the Videos, and Defendant's use of the Videos, if widespread, would harm Plaintiff's potential market for the Videos.

60. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## FIRST COUNT
**(Direct Copyright Infringement, 17 U.S.C. § 501 et seq.)**

61. Plaintiff repeats and incorporates by reference the allegations contained in the



SLG SANDERS LAW GROUP

preceding paragraphs, as though set forth in full herein.

62. The Videos are original, creative works in which Plaintiff owns valid copyrights.

63. The Videos are properly registered with the USCO, and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

64. Plaintiff has not granted Defendant a license or the right to use the Videos, or any portion thereof, in any manner, nor has Plaintiff assigned any of his exclusive rights in the copyrights to Defendant.

65. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. § 106, Defendant improperly and illegally reproduced and publicly displayed portions of the Videos, and prepared a derivative work from Video #1, thereby violating Plaintiff's exclusive rights in his copyrights.

66. Defendant's reproduction and display of the Videos constitute willful copyright infringement.

67. Defendant's willfulness is shown by, among other things, its copying of footage that, by its own credit line, it knew came from another news organization; its failure to seek a license from anyone; its continued display of the Infringing Images for months after Plaintiff's written notices; and its copying of the Videos after at least forty-nine copyright infringement actions had been filed against it.

SLG SANDERS · LAW GROUP ·

68. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each work infringed pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement.

69. As a result of Defendant's violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendant.

70. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 502.

## JURY DEMAND

71. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment finding that Defendant has infringed on Plaintiff's rights to the Videos in violation of 17 U.S.C. § 501 et seq. and award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interests in and to the Videos by copying and displaying portions of them without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 23, 2026

SANDERS LAW GROUP

By: *<u>/s/ Craig B. Sanders</u>*

Craig B. Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 138865

*Attorneys for Plaintiff*

SLG SANDERS LAW GROUP